IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Robert C. Howard, ) | |
| ) | Civil Action No. 8:06-660-CMC-BHH |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Jo Anne B. Barnhart, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

    This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

    The pro se plaintiff, Robert C. Howard, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.[2]

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

    The plaintiff was 49 years old on the date of the Administrative Law Judge's (ALJ) decision. (R. 46.) The plaintiff has a bachelor's degree in business and worked in the past as a self-employed music store owner. (R. 49, 53, 103, 267.) The alleged onset date of disability of the plaintiff is February 1, 2003.

    The plaintiff protectively filed applications for SSI and DIB on October 20, 2003, alleging disability due to a heart condition and bipolar disorder. (R. 41-43; 46; 48-49; 292-96.) The plaintiff's applications were denied initially and upon reconsideration. (R. 28-34.)

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2] Although the plaintiff is currently *pro se*, at the hearing before the ALJ, he was represented by counsel. (R. 321.)

A *de novo* hearing was held before an ALJ on September 2, 2005. (R. 73-209; 321-97.) On September 19, 2005, the ALJ issued an unfavorable decision finding the plaintiff was not disabled. (R. 16-22.) The plaintiff sought review by the Appeals Council and submitted additional evidence which the Appeals Council considered. (R. 302-20.) On December 28, 2005, however, the Appeals Council denied the plaintiff's request to review the ALJ's decision (R. 8-10), thereby making the ALJ's decision Commissioner's final decision of judicial review.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

1. The claimant filed applications for Disability Income Benefits and Supplemental Security Income on December 1, 2003, and he is insured for benefits at least through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since his alleged onset date.

3. The medical evidence establishes that the claimant has coronary artery disease status-post coronary artery bypass grafting and aortic valve replacement, Major Depressive Disorder, and Cognitive Disorder which are "severe" medically determinable impairments within the meaning of 20 C.F.R. § 404.1521 However, the claimant has not established an impairment, or combination of impairments, which meets or is medically equal to any of the Listing of Impairments in Appendix 1, Subpart P of Social Security Regulation No. 4.

4. The claimant retains the residual functional capacity to perform "light" work, limited to simple, routine, repetitive tasks, in a low stress non-production environment, with no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling, no concentrated exposure to extremes of temperature or humidity, and avoidance of hazardous machinery.

5. The claimant is unable to perform his past relevant work.

6. The claimant is a "younger individual" with a college education.

7. Based on an exertional capacity for "light" work, and the claimant's age, education, and work experience, Section 404.1569 and Rule 202.21, Table No. 2, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled."

8. Even if the claimant's non-exertional limitations do not allow him to perform the full range of "light" work, using the above cited rule in conjunction with the credible testimony of the vocational expert, warrants a finding that there are a significant number of jobs in the national economy which the claimant could perform. Examples of such jobs are unskilled jobs at the "light" level of exertion, such as "library worker," with 4,400 positions in North Carolina;

> 9. "clerical office worker," with 4,500 positions in North Carolina and South Carolina; and at the unskilled "sedentary" level, "clerical office worker," with 8,000 positions in North Carolina and South Carolina.
>
> 9. The claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of this decision 20 CFR § 404.1520(f).

(R. 21-22.)

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He

must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **Medical Evidence**

The plaintiff has a history of heart disease, high cholesterol, hypertension, and major depression/bipolar disorder. (R. 193, 201, 203, 229, 245.) On November 12, 2003, the plaintiff was admitted to Springs Memorial Hospital after he complained of chest tightness with exertion, shortness of breath, and left shoulder pain. (R. 193; 229.) He underwent aortic valve replacement and triple coronary artery bypass surgery. (R. 193-228.) During the plaintiff's hospital stay, he was prescribed Lexapro, an antidepressant, and Coumadin, a blood-thinning medication. (R. 201.) His hospital stay was unremarkable and he was released after two weeks. (*Id*.) On December 19, 2003, at a follow-up visit, cardiologist Dr. Deepak B. Shah noted that the plaintiff was "free of any chest pain or shortness of breath" and that he was stable from a cardiac standpoint. (R. 230.)

On January 12, 2004, the plaintiff was seen by Dr. Earl J. Epps, Jr., for a consultative evaluation in connection with his application for benefits. (R. 245-48.) The plaintiff said he had been hospitalized for bipolar disorder in 1994 and had been treated infrequently for mental issues since that time. (R. 245.) He said that he had chest pains which were precipitated by stress and relieved by rest. (R. 245.) Dr. Epps noted that, with regard to the plaintiff's chest pain, "[f]or the New York Heart Classifications, this will place him most likely in the Class II." (*Id*.)[3] He also noted that the plaintiff ambulated without any difficulty. (R. 248.)

On January 21, 2004, cardiologist Dr. Joseph W. Cook reported that the plaintiff had done well postoperatively, was experiencing minimal pain, and was "walking a little bit" and driving (R. 249). Dr. Cook advised the plaintiff that he "should begin to increase his activity, [and] avoid[] heavy lifting for the next six or eight weeks." (R. 249.)

---

[3] The New York Heart Association developed a classification system for heart patients based on clinical severity and prognosis. Class II patients have "slight limitation in physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea, or anginal pain." Objective evidence in Class II patients shows "minimal cardiovascular disease." (R. 248.)

5

From January 29, 2004, through May 2005, the plaintiff received mental health care at the Catawba Community Mental Health Care Center (Catawba). (R. 252-65.)[4] The plaintiff had mental impairments that required regular medication and follow-up care. At the beginning of treatment, he reported past suicidal ideations, poor sleep, increasing crying spells and a past diagnosis of bipolar disorder with mania characterized by impulsivity, hypersexuality, and spending sprees. (R. 252.) An initial mental status examination showed he was alert and oriented, had an appropriate affect and good judgment, but that his memory function was poor. (R. 254.) He was initially diagnosed with a depressive disorder. (R. 255.)

On January 30, 2004, the plaintiff returned to Dr. Shah and denied having any chest pain or shortness of breath. (R. 231). Dr. Shah noted that the plaintiff had "no major complaint." (R. 231.) On February 23, 2004, the plaintiff was seen by therapist Morris F. Britt, Ed.D., for a mental status evaluation. (R. 266-71.) The plaintiff said his bipolar disorder prevented him from working. (R. 267.) He indicated that his daily activities included watching television, visiting with two friends, and "try[ing] to straighten up store problems." (R. 268.) It was noted the plaintiff was oriented in all spheres and had clear, coherent and logical speech. (R. 268.) It was also noted that he had adequate social skills and good reality contact. (R. 268.) Dr. Britt estimated that he appeared to have had high average intellect, but currently fell in the low average to borderline range. (R. 270.) Memory test scores showed generally diminished memory functioning. (R. 270.) Dr. Britt assessed the plaintiff with a recurrent major depressive disorder and memory impairment. (R. 270.) He noted that the plaintiff had poor concentration and failed to reach cognitive goals. (R. 271.)

In a Daily Activities Questionnaire dated April 1, 2004, the plaintiff reported that he needed some help with caring for his personal needs and household chores, but that he

---

[4]Most of the Catawba notes regarding the plaintiff's symptoms and findings on examination are handwritten and difficult to read.

6

lived alone and handled his own financial responsibilities. (R. 99-102.) He reported that he watched movies and visited with friends or relatives once or twice per week. (R. 101.) Later the same month, the plaintiff reported that Lexapro was helping his depression "a little bit" and that he drove for short distances, washed dishes, laundered clothes, bathed and dressed himself, watched television, read, and did routine shopping. (R. 115.) He reported poor energy, and dizziness and shortness of breath with prolonged standing. (*Id*.)

On June 10, 2004, a State agency psychologist Lisa Klohn, Ph.D., reviewed the plaintiff's records and determined that the plaintiff had an organic mental disorder and affective disorder that produced "moderate" limitations in daily activities, social functioning and concentration/persistence/pace, with no episodes of decompensation. (R. 133-49.) Dr. Klohn noted that the plaintiff's cardiac problems had affected his psychological state. (R. 145.) She concluded that despite the plaintiff's depressive disorder and mild memory loss, he "does have functional abilities necessary for performance of unskilled work in a low stress situation." (*Id*.)

On June 12, 2004, State agency physician Dr. Charles C. Jones reviewed the plaintiff's record and assessed his physical residual functional capacity. (R. 151-58.) Dr. Jones stated the plaintiff could lift 20 pounds occasionally and 10 pounds frequently, and stand/walk and sit about six hours each in an eight-hour day. (R. 152.) He further stated the plaintiff could never climb ladders, ropes or scaffolds, but that he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. (R. 153.) Dr. Jones opined the plaintiff needed to avoid concentrated exposure to extreme temperatures and humidity and moderate exposure to hazards. (R. 155.)

On November 5, 2004, the plaintiff was seen by psychologist Lisa G. Bridgewater, Ph.D., for a mental status evaluation in connection with his application for benefits. (R. 276-79.) Dr. Bridgewater noted that the plaintiff's behavior was appropriate and cooperative and that he had a depressed and anxious mood, but there was no evidence of any psychotic thought processes. (R. 277.) She noted that the plaintiff appeared easily

distracted and had some difficulty following instructions. (*Id.*) The plaintiff's showed "mild cognitive impairment" on performance testing. (R. 278.) Dr. Bridgewater noted that the plaintiff demonstrated pressured speech, poor attention and concentration, and disrupted memory. (R. 278.) Dr. Bridgewater concluded that the plaintiff would "likely have difficulty attending to tasks and following through with tasks under his own direction. His distractibility would certainly interferes [sic] with his functioning." (*Id.*) She assessed the plaintiff with bipolar disorder. (R. 279.)

On November 15, 2004, the plaintiff returned to Dr. Shah and denied having any chest pain or shortness of breath. (R. 232). Dr. Shah adjusted his medications and noted that his heart tones were normal. (*Id.*)

On November 24, 2004, State agency psychologist Dr. Edward D. Waller, Ph.D., reviewed the plaintiff's records and concurred with Dr. Klohn's earlier assessment that the plaintiff's mental impairments produced "moderate" limitations in daily activities, social functioning and concentration/persistence/pace, with no episodes of decompensation. (R. 160-75; 184-86). Dr. Waller concluded that the plaintiff "is capable of maintaining a regular work schedule, but may miss an occasional day due to depression." (R. 186.) He opined that the plaintiff would perform better in a low stress work setting that does not require ongoing interaction with the public. (*Id.*)

On December 6, 2004, State agency physician Dr. Joyce B. Lewis reviewed the plaintiff's records and assessed his physical residual functional capacity. (R. 176-83.) Dr. Lewis concurred with Dr. Jones' earlier assessment that the plaintiff could lift 20 pounds occasionally and 10 pounds frequently, and stand/walk and sit about six hours each in an eight-hour workday. (R. 177.) Dr. Lewis opined that the plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl and that he needed to avoid concentrated exposure to extreme temperatures and humidity, and avoid all exposure to hazards. (R. 178; 180.)

On January 26, 2005, Dr. Shah wrote a note indicating that the plaintiff was following the recommended treatment plan for his heart condition. (R. 233.) On March 23, 2005, Dr. Shah noted that the plaintiff was not taking Coumadin as directed, and that he sometimes skipped doses. (R. 289.) At that time, the plaintiff denied any chest pain or shortness of breath. (*Id*.) In May 2005, the plaintiff began receiving treatment at Lancaster Endocrinology for uncontrolled diabetes. (R. 280-87.)

On August 30, 2005, Dr. Shah noted that the plaintiff "continued to have generalized tiredness and fatigue." (R. 290.) He opined that, "[i]n view of multiple medical problems, I do not think he will be able to do any significant gainful work and should be considered for disability." (*Id*.) Also on August 30, 2005, Catawba mental health professional Sarah C. Brickhouse, M.S., wrote a letter in which she stated that the plaintiff had a major depressive disorder (recurrent without psychotic features) and a cognitive disorder, rule out bipolar II, and anxiety disorders. (R. 291.)

At the hearing before the ALJ, the plaintiff testified that he had memory and cognitive problems that prevented him from doing his past work. (R. 338-40.) He said his medications helped with his depression "more often tha[n] not." (R. 349.) He also reported that his eyesight was worsening and that his feet hurt. (R. 353.) He said he had some chest pains and shortness of breath and that he was no longer able to play tennis. (R. 360.) The plaintiff testified that he could do basic housework for half an hour at a time, and that his ability to concentrate was "[u]p and down." (R. 364.) He said he could sit and stand for 30 to 45 minutes at a time each. (R. 367.)

A friend of the plaintiff's, Phillip G. Smith, testified that the plaintiff had become severely depressed a few years earlier and that his behavior had changed significantly. (R. 381.) He testified that the plaintiff became a hermit after his heart surgery and that he continued to exhibit odd behavior. (R. 382.) He testified that the plaintiff "hasn't been able to keep a thought for more than a couple of minutes," that his mind wandered and that he had a very poor short-term memory. (R. 383, 386.)

A VE testified at the hearing. The ALJ asked him a hypothetical question to determine whether the plaintiff's limitations would allow him to perform any work. The VE testified that the hypothetical individual could perform unskilled sedentary or light work. (R. 395). He further testified as to the number of such jobs in the region. (*Id.*)

## **DISCUSSION**

The *pro se* plaintiff contends the ALJ erred in not finding him disabled and he alleges the ALJ's decision is not supported by substantial evidence.[5] The plaintiff cites to specific lay, medical, and Vocational Expert ("VE") evidence as overwhelming evidence that he is unable to work. (Pl.'s Brief 1-2.) All of this evidence was submitted to the ALJ or the Appeals Council.

As for lay evidence, the plaintiff cites to Phillip Smith who testified at the hearing before the ALJ that the plaintiff was at one time an active businessman who has now deteriorated to the point where he is prevented from working. (Pl.'s Brief at 1.) The plaintiff also refers to a letter from himself in which he refutes that he has failed to take the prescription medication Coumadin as directed. (Pl.'s Brief Ex. A.)

As for medical evidence, the plaintiff cites to a letter dated August 30, 2005, from Dr. Deepak B. Shah, a cardiologist, who opined that the plaintiff was unable to do any significant gainful work. (Pl.'s Brief at 2 & Ex. B.) The plaintiff also refers a letter dated November 4, 2005 from Dr. Shah[6] in which he opines that the plaintiff's peripheral neuropathy in the lower extremities prevents the plaintiff from "routine activity and work." (Pl.'s Brief at 2 & Ex. C.)

The plaintiff also cites to a letter from Sara C. Brickhouse, a mental health professional at The Catawba Community Mental Health Center. (Pl.'s Brief at 2.)

---

[5]Although the plaintiff is currently proceeding *pro se*, he was represented by counsel at the hearing before the ALJ and before the Appeals Council. (R. 12; 321.)

[6]The court notes that the plaintiff incorrectly refers to Dr. Shah as Dr. Shaw several times in his brief.

10

Brickhouse states that the plaintiff has been seen at the center since February 6, 2004, and has been diagnosed with Major Depressive Disorder, recurrent without psychotic features. She also noted he was prescribed Lexapro. (Pl.'s Brief Ex. D.)

Last, the plaintiff cites to a letter from the Diabetes Education Center at the University of South Carolina's Health Services which he contends refutes the ALJ's conclusion that the plaintiff failed to attend diabetes education. (Pl.'s Brief at 2 & Ex. E.)

As for vocational testimony, the plaintiff cites to a letter dated October 19, 2005, from Gary A. Conrad, a Rehabilitation Counselor at the South Carolina Vocational Rehabilitation Department. (Pl.'s Brief at 2 & Ex. F.) The plaintiff contends this letter refutes the VE's testimony regarding the availability of jobs in South Carolina. (Pl.'s Brief at 2.)

As noted above, this evidence was presented to the ALJ or the Appeals Council. The ALJ, however, specifically found the plaintiff was not disabled. The ALJ concluded that the plaintiff's heart condition limited him to performing a limited range of light work in a low stress environment with restrictions on climbing, balancing, stooping, kneeling, crouching, crawling and exposure to extreme temperatures, humidity and hazards. (R. 19, 394.) The undersigned concludes that the ALJ's decision is supported by substantial evidence.

The plaintiff has a history of heart problems and underwent valve replacement and triple bypass surgery in November 2003. (R. 200.) In December 2003, Dr. Shah noted that the plaintiff was stable from a cardiac standpoint. (R. 230.) In January 2004, only two months after surgery, Dr. Cook recommended that the plaintiff increase his activity and told him to avoid only "heavy lifting" for a period of six to eight weeks. (R. 249.) The plaintiff denied having any chest pain or shortness of breath, and Dr. Shah noted that he had "no major complaint." (R. 231.) In November 2004 and March 2005, the plaintiff continued to deny having any chest pain or shortness of breath. (R. 232; 289.) Thus, the medical evidence as a whole did not demonstrate a heart condition that was severe enough after the surgery to prevent the plaintiff from performing all work. *See Craig v. Chater*, 76 F.3d

585, 591-596 (4th Cir. 1996) (medical evidence supported a conclusion that claimant was not disabled). Additionally, in April 2004, the plaintiff himself indicated that he handled his own financial responsibilities, (R. 99-102), drove short distances, laundered clothes, washed dishes, read and did routine shopping. (R. 115.)

As for Dr. Shah's conclusion that the plaintiff could not perform any significant gainful work and "should be considered for disability," (R. 290; 315), statements that a claimant is disabled or unable to work are not medical opinions, but rather opinions on the ultimate issue of disability, which is a statutory matter reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1); Social Security Ruling (SSR) 96-5p (statements that a claimant is "disabled" or "unable to work" are addressed to administrative findings that are reserved to the Commissioner and are not entitled to controlling weight or special significance).

Furthermore, Dr. Shah's opinions as to the plaintiff's ability to work are unsupported by his own treatment notes. Dr. Shah repeatedly noted that the plaintiff had no chest pain or shortness of breath, was stable from a cardiac standpoint, and had no major complaints. (R. 230, 231, 232, 289.) While Dr. Shah stated in November 2005 that the plaintiff had peripheral neuropathy that prevented him from working, there is no evidence that the physicians who treated the plaintiff's diabetes ever placed any diabetes-related work restrictions on him. Thus, the ALJ were not bound by Dr. Shah's unsupported opinions that the plaintiff was disabled. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (controlling weight will be given to a treating physician's opinion concerning the severity of a claimant's impairment only if the opinion is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques) (emphasis added). Additionally, two State agency physicians reviewed the medical evidence and found the plaintiff could perform a range of light work, which further support the ALJ's decision. (R. 151-58, 176-83.) SSR 96-6 (stating state agency sources are highly qualified in matters relating to establishment of disability under the Act).

The ALJ also acknowledged that the plaintiff has severe mental impairments that limit his ability to work. However, the mere diagnoses of mental impairments is not necessarily sufficient to establish that a claimant is disabled under the Act. *See Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992) (holding mental impairments are not necessarily disabling). Substantial evidence supported the ALJ's finding that the plaintiff could perform "simple, routine, repetitive jobs of a lowstress, non-production nature . . . [with] limited interaction with crowds of people or coworkers." (R. 19; 394.) The ALJ limited the plaintiff to a range of unskilled work based upon his mental impairments. The findings of Drs. Klohn and Waller, two State agency psychologists who reviewed the plaintiff's record, also support the ALJ's finding that the plaintiff could perform simple, routine work. Drs. Klohn and Waller acknowledged that the plaintiff had moderate mental limitations from his impairments, (R. 143; 172), but they concluded that he could perform unskilled work in a low stress situation. (R. 145.)

And finally, the letter from the vocational rehabilitation counselor who stated that there were currently no vacancies in the jobs cited by the vocational expert is not controlling since job vacancies or the ability of a claimant to be hired are not part of the vocational analysis in disability determinations. 20 C.F.R. § 404.1566(c) ("We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of . . . [l]ack of work in your local area; . . . [c]yclical economic conditions; . . . [n]o job openings for you; . . . [etc.]"). While the plaintiff obviously disagrees with the findings of the ALJ, the undersigned has previously concluded that these findings are supported by substantial evidence. Hence, the hypothetical given by the ALJ to the VE was proper, and the undersigned finds no grounds in the ALJ's treatment of the VE's testimony for reversal of the final decision of the Commissioner. *Lee v. Sullivan*, 945 F.2d 687, 694 (4th Cir. 1991).

The undersigned notes that the Commissioner concedes that the ALJ erred in stating that there were numerous references to noncompliance. (Resp.'s Brief at 17.) However, the Commissioner contends that even without the evidence of noncompliance, there is substantial evidence supporting the ALJ's decision that the plaintiff is not disabled. (*Id.*) Given the substantial evidence supporting the ALJ's decision discussed above, the undersigned agrees.

### **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the finding of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>
United States Magistrate Judge

December 20, 2006.
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).